UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KATHY L. SLADEK, | ) |
|        Plaintiff, | ) No. 19 C 1282 |
|        v. | ) Judge Durkin |
| MEGAN J. BRENNAN, United States Postmaster General, | ) |
|        Defendant. | ) |

## DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS

Defendant Megan J. Brennan, Postmaster General, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, pursuant to Fed. R Civ. P. 56 and LR 56.1 of the Northern District of Illinois, submits this statement of facts as to which there is no genuine issue:

1. Plaintiff, Kathy Sladek, began working for the Postal Service in 1974. Ex. 1, Sladek Dep. Tr. at 14.

2. In 1984, Sladek was promoted into a mail flow controller position, EAS-14, at the Chicago Bulk Mail Center (CBMC) in Forest Park, Illinois. *Id.* at 14-15, 26-27, 65.

3. As a mail flow controller, Sladek was responsible for monitoring the flow of packages and sacks of packages or bulk mail transported on conveyer belts running throughout the CBMC. *Id.* at 15-16, 52.

4. Sladek was considered to be part of Postal Service management; as a mail flow controller she could direct postal maintenance and custodian employees to repair problems with the conveyer belt system, as well as monitoring the work and attendance of postal employees working around the conveyer belts. Ex. 1, Sladek Dep. Tr. at 15, 16, 18. Because Sladek was

considered part of management, Sladek was not represented by a union and therefore not covered by union agreements with the Postal Service.  Ex. 1,  Sladek Dep. Tr. at 18;  Ex. 6 at 13-14.

     5.     In 1993 or 1994, Sladek bid on and was assigned to a mail flow controller position on Tour 2 or the shift at the CBMC working from about 4:30 a.m. to 1:00 p.m.  Ex. 1,  Sladek Dep. Tr. at 64-65, 66.

     6.     While still assigned as a mail flow controller working on Tour 2, Sladek was temporarily assigned or detailed to work in operations support (OSS) at the CBMC, from January 3, 2009 through February 27, 2009.  Ex. 1, Sladek Dep. Tr. at 54-56; at Dep. Ex. B at 178.  Sladek's work hours in this temporary assignment were from 7:30 p.m. to 4:00 a.m.  Ex. 1, Sladek Dep. Tr. at 57-58; at Dep. Ex. B at 178.

     7.     While still assigned as a mail flow controller working on Tour 2, Sladek was also temporarily assigned or detailed to a Tour 1 mail flow controller position in March 2009, working from 12:30 a.m. to 8:30 a.m., by lead manager of distribution operations Melvin Smith.  *Id.* at 20, 24, 34;  Ex. 2, Smith Decl., ¶ 14.  There was only one Tour 1 mail flow controller position at the CBMC from March 2009 to April 2010, and Sladek was the only mail flow controller in that position during that time period (with the exception of mail flow controllers who covered for her when she was on leave).  Ex. 1,  Sladek Dep. Tr. at 34-35.

     8.     While still assigned as a mail flow controller working on Tour 2 and temporarily assigned or detailed to a Tour 1 shift working at the CBMC, from May 4 through May 8, 2009 Sladek was temporarily assigned or detailed to a process control trainee position working in the computer room of the CBMC from 7:00 a.m. to 3:30 p.m.  Ex. 1,  Sladek Dep. Tr. at  58-60; at Ex. B at 179.

9. While still assigned as a mail flow controller working on Tour 2 and temporarily assigned or detailed to a Tour 1 shift working at the CBMC, from May 11 through May 15, 2009 Sladek was temporarily assigned or detailed to a process control trainee position working in the computer room of the CBMC from 7:00 a.m. to 3:30 p.m. Ex. 1, Sladek Dep. Tr. at 60; at Ex. B at 180.

10. While still assigned as a mail flow controller working on Tour 2 and temporarily assigned or detailed to a Tour 1 shift working at the CBMC, from May 17 through May 22, 2009 Sladek was temporarily assigned or detailed to a process control trainee position working in the computer room of the CBMC from 11:00 p.m. to 7:30 a.m. Ex. 1, Sladek Dep. Tr. at 61; at Ex. B at 181.

11. While still assigned as a mail flow controller working on Tour 2 and temporarily assigned or detailed to a Tour 1 shift working at the CBMC, from June 8 through June 20, 2009 Sladek was temporarily assigned or detailed to a process control trainee position working in the computer room of the CBMC from 11:00 p.m. to 7:30 a.m. Ex. 1, Sladek Dep. Tr. at Ex. B at 182.

12. While still assigned as a mail flow controller working on Tour 2 and temporarily assigned or detailed to a Tour 1 shift working at the CBMC, from August 23 through August 24, 2009 Sladek was temporarily assigned or detailed to a process control trainee position working in the computer room of the CBMC from 7:00 a.m. to 3:30 p.m. Ex. 1, Sladek Dep. Tr. at Ex. B at 183.

13. While still assigned as a mail flow controller working on Tour 2 and temporarily assigned or detailed to a Tour 1 shift working at the CBMC, from December 12 through December 13, 2009 Sladek was temporarily assigned or detailed to a process control trainee position working

in the computer room of the CBMC from 11:00 p.m. to 7:30 a.m.  Ex. 1,  Sladek Dep. Tr. at Ex. B at 183.

      14.      In early 2010, mail processing equipment and parcel and sack mail operations were shut down on Tour 1 at the CBMC due to reorganization caused by a decrease in the amount of bulk mail.  Ex. 2, Smith Decl., ¶¶ 8, 9; Ex. 3, Evans Aff. at 129; Ex 9, Evans Decl., ¶¶ 2-4.  As a result, many employees working on that shift were excessed or transferred to other facilities, and mail processing equipment removed from the CBMC.  Ex 9, Evans Decl., ¶¶ 3-4.

      15.      Because mail processing operations on Tour 1 were shut down in early 2010, there was no longer a need for a mail flow controller on Tour 1, and Sladek was directed by her manager, Cynthia Evans, to return to her regular Tour 2 assignment in April 2010.  Ex. 2, Smith Decl., ¶ 8; Ex. 3, Evans Aff. at 129; Ex 9, Evans Decl., ¶ 6.

      16.      At the time that Evans directed Sladek to return to her Tour 2 assignment in April 2010, Evans told Sladek that she might consider Sladek for reassignment back to Tour 1, should mail processing resume on Tour 1.  Ex. 3, Evans Aff. at 131; Ex 9, Evans Decl., ¶ 13.

      17.      Sladek did not want to return to her Tour 2 assignment and told Evans that she might need to retire early (Sladek was planning on retiring in January 2011) if she wasn't given work hours that would allow her to be home from 2:00 p.m. to 6:00 p.m. to take care of her ailing husband.  Ex 8, Sladek's OFO Appeal at 89, 92.

      18.      Evans told Sladek that she didn't need to retire, and that she might work with Sladek on scheduling issues later, but that she was short on mail flow controllers for Tour 2 and needed Sladek's help.  Ex 8, Sladek's OFO Appeal at 89, 92; Ex 9, Evans Decl., ¶¶ 12-13.

      19.      Sladek did not apply for an assignment to any other position or Tour, but instead went on leave and applied for retirement from the Postal Service one month later, in May 2010.

4

Ex. 1, Sladek Dep. Tr. at 40, 42; at Ex. A at 3. Sladek remained on payroll until July 30, 2010, when her retirement became effective. Ex. 1, Sladek Dep. Tr. at 47; Ex. A at 1.

**Administrative EEO Proceedings**

20. Sladek sought EEO counseling claiming race and color discrimination and later filed an administrative complaint of discrimination on June 21, 2010. Ex. 4 at 17-19; Ex. 6 at 1.

21. In her June 2010 administrative EEO complaint, Sladek alleged that she had been discriminated against on the basis of her race and color when her "midnight shift" was canceled and she was told by management to report to the day shift, and that this forced her to take an early retirement to care for her ailing husband. Ex. 4 at 17-18. Sladek in her administrative complaint acknowledged that her manager told her in April 2010 that she would later work with Sladek on her scheduling issues. Ex. 4 at 18.

22. On June 30, 2010, the Postal Service issued a final decision and dismissed the administrative EEO complaint for failure to state a claim. Ex. 6 at 2.

23. On July 12, 2010, Sladek appealed the dismissal of her administrative EEO complaint to the Office of Federal Operations of the EEOC (OFO). Ex. 6 at 2.

24. On October 22, 2010, the OFO reversed the Postal Service's final decision and remanded the administrative EEO complaint for further processing. *Id.* On November 4, 2010, the agency accepted the remanded EEO complaint as Sladek alleging discrimination based on race/color (white) when on April 7, 2010, she was told that she could no longer work on Tour 1, and would be reassigned to Tour 2 and as a result of the schedule change, was forced to retire. *Id.*

25. Sladek's administrative EEO claims were fully investigated under applicable EEOC regulations, 29 C.F.R. §1614.103, *et seq.*, and a copy of the investigative report (ROI) was sent to Sladek on January 6, 2011. Ex. 6 at 2.

5

26. On January 19, 2011, Sladek requested a hearing. *Id.* On June 25, 2012, EEOC administrative judge Laurie Wardell granted the Postal Service's motion for summary judgment, finding that Sladek failed to set forth a *prima facie* case of discrimination based on Sladek's failure to show that a similarly situated non-white employee was treated more favorably, that management had presented a legitimate, nondiscriminatory reason for its action, and that Sladek failed to submit sufficient evidence to establish pretext. *Id.*

27. On July 12, 2012, the Postal Service issued a final decision in accordance with the administrative judge's grant of summary judgment. *Id.* On August 10, 2012, Sladek appealed Postal Service's final decision order to the OFO. *Id.*

28. On October 9, 2014, the OFO vacated the Postal Service's final decision, finding that the Postal Service conducted an inadequate investigation because the record contained insufficient evidence to support its position that there was no mail flow controller work that Sladek could perform on Tour 1 during the relevant period. *Id.*

29. The OFO remanded the matter to the Postal Service to supplement the record and further ordered that the EEOC administrative judge hold a hearing and the Postal Service to issue a final agency decision. Ex. 6 at 2.

30. On remand the Postal Service supplemented the administrative record through the submission of declarations, documents and testimonial evidence. *Id.*

31. In March 2016, almost six years after Sladek filed her administrative EEO complaint, Sladek asked EEOC administrative judge Winston J. Jackson, Jr. to amend the administrative EEO complaint to include a sex discrimination and ADA claim. Ex. 6 at 1, n.1. In April 2016, administrative judge Jackson denied Sladek's request to amend her administrative EEO complaint as untimely and unduly prejudicial. *Id.*

32. On June 20, 2016, Sladek withdrew her request for a hearing and EEOC administrative judge Winston J. Jackson, Jr. dismissed her hearing request and ordered the Postal Service to issue a final agency decision. Ex. 6 at 3.

33. On August 16, 2016, the Postal Service issued a final agency decision finding that Sladek failed to sustain a *prima facie* case of discrimination because she failed present evidence that comparable employees outside of her race and color were treated more favorably. *Id.* at 8-10. The final agency decision noted that Sladek admitted in her EEO affidavit that she was unaware of any other employee whom did not have their shifts or tours changed in 2010 by the same managers that she had accused of discrimination. Ex. 6 at 10; Ex. 7 at 113.

34. The final agency decision also found that Sladek failed to present any evidence that her workplace was so intolerable that she was forced to retire, noting that Sladek herself admitted that her supervisor told her not to retire, and therefore found against Sladek on her constructive discharge claim. Ex. 6 at 25-26.

35. Sladek appealed the Postal Service's August 2016 final agency decision finding no race or color discrimination to the OFO and the OFO affirmed the final agency decision on November 29, 2018. Dkt. 8 at 20-30; Ex. 10 at 8, 10-11. Sladek's appeal to the OFO did not challenge the EEOC administrative judge's denial of her belated request to add sex and age discrimination claims. Dkt. 8 at 25; Ex. 10 at 6.

**In District Court**

36. Following the OFO's November 2018 affirmance of the Postal Service's August 2016 final agency decision finding no discrimination, Sladek filed suit. Dkt. 8.

37. Sladek's district court complaint alleged sex and age discrimination, in addition to the race and color claims that had been raised and exhausted in her 2010 administrative EEO complaint. Dkt. 8 at 15; Ex. 4 at 17-18.

38. During her deposition, Sladek testified that she accepted details or temporary assignments to a number of positions in 2009. Ex. 1, Sladek Dep. Tr. at 20, 24, 34, 57-60; at Ex. B at 178-185. The work hours for these positions varied from 7:00 a.m. to 3:30 p.m., to 11:00 p.m. to 7:30 a.m., and to 12:30 a.m. to 8:30 a.m. *Id.*

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Ernest Y. Ling
ERNEST Y. LING
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-5870
ernest.ling@usdoj.gov